UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD JORDAN,

       Plaintiff,

v.                                      Case No. 2:08-cv-261
                                            HON. ROBERT HOLMES BELL

PATRICIA CARUSO, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Ronald Jordan, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia Caruso, MDOC Employee Christopher Chrysler, MDOC Employee Scott Schooley, Assistant Deputy Warden James Alexander, Resident Unit Manager Steven Niemi, Grievance Coordinator Michael Laitinen, Case Manager Fred Govern, Resident Unit Manager Ken Niemisto, Former Warden David Bergh, Classification Director S. Schroeder, Chaplain Gerald Riley, Administrative Assistant Ann Barsch, Inspector J. Contreras, Guard D. Olger, Resident Unit Manager D. McBurney, Guard T. DeJong, Resident Unit Manager C. Konrad, and Case Manager L. Phillipson.

      In his complaint, Plaintiff alleges that he is African American and is Jewish. Plaintiff claims that his religious beliefs require him to attend weekly Sabbath services, but that such services are not available at LMF. Plaintiff states that it is possible for him to attend weekly services via videoconference equipment, but that Defendants Caruso, Bergh and Riley refuse to consider such

an option. Plaintiff also claims that Jewish law forbids the performance of any work on the Sabbath, but that he is required to work on Saturdays in violation of his beliefs.

Plaintiff alleges that on March 4, 2008, Defendant Olger searched Plaintiff's property and confiscated numerous items as being "not allowed in Level V" despite the fact that Plaintiff possessed the items while in Level V custody at the Marquette Branch Prison (MBP). Plaintiff received a hearing on April 2, 2008, and Defendant McBurney found that all items were determined to be contraband per the notice of intent written by Defendant Olger. Plaintiff claims that this was a denial of his due process rights.

Plaintiff claims that on March 27, 2008, Defendant DeJong confiscated three bags of coffee creamer from Plaintiff, stating that they were combustible. Plaintiff was issued a notice of intent. Plaintiff claims that he was allowed to possess creamer while at MBP. On April 1, 2008, Plaintiff received a hearing and Defendant Phillipson affirmed that three bags of creamer are not allowed due to the combustibility of the material. Plaintiff claims that this was a denial of his due process rights.

Plaintiff contends that on March 4, 2008 Defendant Olger confiscated a folder containing 43 photos from Plaintiff's legal property. Plaintiff states that the photos were part of the police investigation file related to Plaintiff's 1982 criminal conviction. Plaintiff states that he had been in the process of researching and preparing a motion for relief from judgment from his criminal conviction based upon the use of these photos at his trial. Plaintiff claims that without the photos, he is unable to complete and file his motion for relief from judgment. Plaintiff states that MDOC Policy Directive 04.07.112 allows prisoners to possess such photographs. According to the complaint, on March 6, 2008, Defendant Contreras issued a notice of intent to divest Plaintiff of the photos, stating:

While reviewing incoming property, it was observed that prisoner Jordan was in possession of a homemade type photo album (43 pictures). This album consisted of a crime scene, injuries to victim and the autopsy.

Per PD-05.03.118, Section HH, states the following pose such risks within a correctional facility under all circumstances and therefore shall be rejected: #16. Official photographs of a victim at a crime scene or deplicting [sic] injuries to a victim sustained as a result of a crime that were taken for purposes of criminal investigation or prosecution. This includes photographs of the autopsy of a victim.

Plaintiff states that the policy relied on by Defendant Contreras is the prison mail policy. On April 2, 2008, Defendant McBurney conducted a hearing and Plaintiff provided a written statement that the materials were authorized legal materials and had never been in the mail to be affected by the mail policy. Plaintiff explained that the materials were necessary for completing his motion for relief from judgment. Defendant McBurney arbitrarily deprived Plaintiff of his photographs. Plaintiff sent a letter of complaint to Defendant Caruso, to no avail. Plaintiff also filed a grievance and appealed the denial to step III.

Plaintiff alleges that for the past 15 years, he has been screened at level II custody, but has been held in level V maximum security on the pretext that he is an escape risk based on a 1985 misconduct conviction for conspiracy to escape. Plaintiff states that Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, McBurney and Phillipson have all approved the increased security level, stating that Plaintiff is an escape risk. Plaintiff alleges that these same Defendants have all recommended white prisoners with histories of two or more escapes or attempted escapes for lower security levels. Plaintiff states that the following white prisoners were placed in reduced security despite extensive escape histories: 123622 Bowman, 171661 Cole, 122571 Collins, 171612 Coblaze, 156641 O'Brien, 164271 Jenson, 186762 Larkin, 136985 Ashley, 145861 Mithrandir, 197382 Stanfill, 184089 Siminski, 156290 Coyle, 148692

Jakupaj, 158249 Loukas, and 111984 Hoffman. Plaintiff claims that such conduct violates his equal protection rights.

On December 5, 2008, the court dismissed Defendants DeJong and Caruso and ordered service on the remaining Defendants. Presently before the Court are the Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. In addition, Plaintiff has filed motions to amend and for partial summary judgment. The parties have responded to the motions and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff claims that Defendants Bergh, Riley and Schroeder violated his First Amendment right to freely exercise his religious beliefs by not providing him with a weekly venue to observe the Sabbath, as well as by requiring him to work on the Sabbath. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at \*2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1.  does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2.  are there alternative means of exercising the right that remain open to prison inmates;

- 5 -

3.    the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.    whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

In support of their motion for summary judgment, Defendants Bergh, Riley and Schroeder attach their affidavits, in which they attest that Plaintiff arrived at LMF on February 29, 2008, from MBP in order to receive a Kosher diet. Plaintiff is a very high escape risk and murdered another prisoner while incarcerated. Plaintiff was placed in administrative segregation after stating that a staff member at MBP should be murdered in the most painful means imaginable.

Defendant Bergh attests that pursuant to Policy Directive 05.03.150, a facility need not conduct a religious service if there are less than five prisoners within the same security level of

that institution who actively participate in the religious activities of a group. *Id.* at ¶ X. Defendant

Bergh states that the policy at LMF is more lenient, and only requires four prisoners for a religious

call-out. Currently, there are no formal Jewish services at LMF and Plaintiff was placed on a waiting

list until the requisite minimum number of requests for such services was made. At the time of

Plaintiff's request, there was only one other prisoner that had requested Jewish services.

(Defendants' Exhibit A, ¶¶ 5-6, 9, and Exhibit S, ¶¶ 3-6.)

Defendant Bergh does not recall Plaintiff ever requesting a teleconference video

Sabbath, but even if such a request had been made, it would have been denied as not feasible because

LMF does not have any video conference equipment. In addition, there is no provision in MDOC

policy which allows prisoners to have Sabbath days off. (Defendants' Exhibit A, ¶ 8, and Exhibit

S, ¶¶ 7-8.) Defendant Schroeder attests that before a prisoner is placed in a work assignment, they

are first placed in an assignment pool. Prisoners are then placed in the first available work / school

position. Plaintiff was scheduled to work as a Unit Porter on Friday, Saturday, and Sunday from

8:20 a.m. until 1:00 p.m. (Defendants Exhibit C, ¶¶ 4-6.) Policy Directive 05.03.150 provides that

prisoners shall not be released from work or school assignments to attend group religious services

or activities. Instead, such services are scheduled when the majority of prisoners have leisure time.

*Id.* at ¶ BB.

In response to this assertion, Plaintiff states that Defendants have done nothing to

accommodate his religious beliefs, and that he could have received a Kosher diet at MBP, but was

instead transferred to LMF. Plaintiff contends that the MDOC has an established practice of using

transfers to accommodate religious practice, and states that Defendants could have chosen to transfer

him to a facility where he could attend religious services. In addition, Plaintiff offers the affidavit

of prisoner Langford Underwood #196587, in which he attests that LMF does have a video

conference system and that he has used the system to communicate with prisoners in other facilities on more than one occasion. (Plaintiff's Exhibit 7, p. 4, docket #90.) Plaintiff also offers a copy of the June 2, 2008, kite to Defendant Konrad, as well as Defendant Konrad's response. In the kite, Plaintiff states that he is an adherent to the Jewish faith and that observance of the Sabbath is an essential requirement for his religious beliefs. Plaintiff complains that his current work assignment as a prison porter requires him to work on the Sabbath. In the response, Defendant Konrad denies Plaintiff's request for a change in his schedule in order to comply with Plaintiff's religious beliefs, and advises Plaintiff that he could request another work assignment after 90 days of satisfactory work evaluations. (Plaintiff's Exhibit 7, p. 1.) Plaintiff also attests that prisoner porter assignments have three day (Friday - Sunday) and four day (Monday - Thursday) details, and notes that Defendants have failed to explain why he could not simply work the four day detail so that he could observe the Sabbath in compliance with his religious beliefs. (Plaintiff's Affidavit, ¶ 4.)

In the opinion of the undersigned, there is a genuine issue of material fact regarding whether Defendants Bergh, Riley and Schroeder violated Plaintiff's right to freely exercise his religious beliefs. Therefore, summary judgment is not appropriate on this issue.

Plaintiff asserts that Defendants Olger, Contreras and McBurney violated his right of access to the courts when they confiscated a folder containing 43 photos from Plaintiff's legal property and arbitrarily deprived Plaintiff of his photographs following a hearing. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996).

Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

In support of the request for summary judgment, Defendant McBurney attests that during the hearing, Plaintiff never stated that he needed the photographs in order to prepare a motion for relief from his criminal convictions. In addition, Plaintiff had the photographs shipped out of the facility at his own expense, and had control over their destination. (Defendants' Exhibit H, ¶¶ 3-4.) In his affidavit, Plaintiff claims that the photographs of the crime scene were necessary for him to prepare his motion for relief from judgment and that he was forced to send them to his 73 year-old

sister, who suffers from progressive degenerative memory loss and cannot assist Plaintiff with his motion for relief from judgment. (Plaintiff's Affidavit, ¶¶ 7-9.)

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

As noted above, Plaintiff claims that the confiscation of the photographs impaired his ability to prepare his motion for relief from judgment. However, pursuant to *Thaddeus-X*, right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only. A motion for relief from judgment provides a means to challenge a prisoner's conviction in the Michigan courts where he has already had an appeal by right or by leave, or has unsuccessfully sought leave to appeal, or who was unable to file an application for leave to appeal to the Court of Appeals because 12 months have elapsed since the judgment. See MCR 7.205(F)(3); Staff Comment to Rule 6.501. Therefore, this does not constitute a direct appeal, habeas corpus application or civil rights claim.

Moreover, Plaintiff's contention that he needed the photographs to support his claim that they were improperly admitted at trial because they were more prejudicial than probative lacks merit. Plaintiff could have made this argument without use of the photographs, since the photographs are part of the state court record. Accordingly, the undersigned recommends that Defendants Olger, Contreras and McBurney be granted summary judgment on Plaintiff's access to courts claim.

Plaintiff also asserts equal protection claims against Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, McBurney and Phillipson. To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). The typical case involves allegations that state officials have discriminated on the basis of race or gender.

In this case, Plaintiff claims that he was discriminated against on the basis of his race. Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, and McBurney assert that race was never a factor in any decision regarding Plaintiff's placement in level V, and offer their affidavits in support of this assertion. Rather, his placement was based on the fact that he is serving a life sentence, murdered an inmate while incarcerated, and is a high escape risk. (Defendants' Exhibits H, J, K, L, M, N, O, P, Q, and R.) In response to this assertion, Plaintiff offers his own affidavit, as well as the affidavit of prisoner George Couch. Prisoner Couch attests that he is Caucasian, has a history of escape, and was convicted of first-degree murder involving the stabbing of another prisoner. Prisoner Couch states that he was incarcerated at MBP with Plaintiff

in 1987, but was then transferred to a lower security level facility. Prisoner Couch indicates that over the past 22 years that he was in prison, he observed many white prisoners receive preferential treatment over black prisoners. (Plaintiff's Exhibit 7, p. 3.) In the opinion of the undersigned, Plaintiff has succeeded in showing that there is a genuine issue of material fact regarding his equal protection claims. Therefore, Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, and McBurney are not entitled to summary judgment on the merits of these claims.

Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, and McBurney also claim that Plaintiff failed to exhaust his administrative remedies on these claims. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances

---

[1]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶S.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, and McBurney attach a copy of the grievance category codes, which shows that the code for racial discrimination is "06a."  (Defendants' Exhibit U.)  Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, and McBurney also offer a copy of the grievance inquiry for Plaintiff, which shows that he never exhausted a grievance with that grievance category code.  (Defendants' Exhibit V.)  However, in response to this assertion, Plaintiff refers the court to copies of grievance numbers LMF 08-05-2239-24c and LMF 09-03-0731-24c, which are attached as Exhibits 1 and 2 to docket #84.  In those grievances, Plaintiff states that he has been consistently denied custody reduction based on his race.  The grievance inquiry shows that Plaintiff exhausted his remedies with regard to grievance number LMF 08-05-2239-24c, although grievance number LMF 09-03-0731-24c was filed after the instant action was filed.[2]  A review of grievance number LMF 08-05-2239-24c shows that Plaintiff failed to name Defendants

---

[2]The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  The administrative process must be complete before the prisoner files an action in federal court.  *Id.*

Chrysler, Schooley, McBurney, or Konrad in his grievance. As noted above, dates, times, places and names of all those involved in the issue being grieved are to be included. Accordingly, it appears that Plaintiff exhausted his administrative remedies with regard to his equal protection claims as to Defendants Govern, Alexander, Niemi, Laitinen, Barsch, and Niemisto, but not as to Defendants Chrysler, Schooley, McBurney, and Konrad. The undersigned therefore recommends that with regard to Plaintiff's equal protection claims, Defendants Chrysler, Schooley, McBurney, and Konrad be granted summary judgment, and that Defendants Govern, Alexander, Niemi, Laitinen, Barsch, and Niemi be denied summary judgment.

Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, and McBurney, as well as Defendant Phillipson, state that they are entitled to summary judgment on Plaintiff's claims that they conspired to violate his equal protection rights. In order to state a claim of civil conspiracy under 42 U.S.C. § 1985, a plaintiff must establish (1) a conspiracy involving two or more persons, (2) for the purpose of depriving a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992).

In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. Defendants

state that Plaintiff has failed to allege the existence of a single plan or come forward with any evidence that each Defendants shared in the conspiratorial objective. In addition, they note that Plaintiff is suing Defendants located in two different prisons and the MDOC central office, and is setting forth specific isolated incidents with unique facts and circumstances.

Plaintiff responds that the existence of an agreement may be inferred from the fact that Defendants all engaged in conduct which resulted in Plaintiff being kept in level V security on the basis of his race. However, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 42 U.S.C. § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). In the opinion of the undersigned, Defendants are correct in noting that the existence of multiple incidents of misconduct does not rise to the level necessary to show that there was a single plan. Therefore, the undersigned recommends that Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, McBurney, and Phillipson be granted summary judgment on Plaintiff's conspiracy claims.

Defendants Bergh, Schroeder, Riley, Barsch, Contreras, Olger, Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Niemisto, Konrad, and McBurney contend that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21,

1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[3] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants Bergh, Schroeder, Riley, Barsch, Contreras, Olger, Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Niemisto, Konrad, and McBurney also claim that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to

---

[3] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated with regard to his access to courts claims or his conspiracy claims, Defendants are entitled to qualified immunity with regard to those claims.

In her motion for summary judgment, Defendant Phillipson asserts that she is entitled to summary judgment for failure to exhaust administrative remedies. Plaintiff's only claim against Defendant Phillipson is that she violated his equal protection rights by keeping him confined to security level V on the basis of his race. Defendant Phillipson notes that she was not named in grievance number LMF 08-05-2239-24c, which exhausted Plaintiff's claims regarding the alleged equal protection violations. As noted above, dates, times, places and names of all those involved in the issue being grieved are to be included in the grievance.

Plaintiff concedes that he failed to comply with this requirement with regard to Defendant Phillipson. However, Plaintiff asserts that pursuant to *Jones v. Bock*, 549 U.S. 199, 217 (2007)*,* not every Defendant need be named in the grievance. However, at the time the court decided *Jones v. Bock*, the MDOC grievance procedure did not specifically require that each involved party be named. *Id.* at 218. After the Court's decision in *Jones v. Bock*, the grievance was changed to add this requirement. As noted by the court in *Jones v. Bock*, "the level of detail necessary in a grievance

to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* Therefore, Plaintiff's failure to name Defendant Phillipson in his grievance entitles her to summary judgment.

In the alternative, Defendant Phillipson asserts that she was never actually involved in a security classification screen for Plaintiff. Defendant Phillipson attests that when Plaintiff arrived at LMF from MBP, his security classification screen had already been completed by staff at MBP. (Defendants' Exhibit Z, ¶ 3.) Security classification screens are completed on an annual basis, and Defendant Phillipson was not Plaintiff's Case Manager or Assistant Resident Unit Supervisor at the time that Plaintiff's screen was completed on February 25, 2009. Defendant Phillipson states that she neither recommended nor approved Plaintiff's level V placement. (Defendants' Exhibit Z, ¶¶ 4-6.)

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Phillipson was personally involved in the activity which forms the basis of his claim. In fact, Plaintiff fails to allege any specific facts with regard to Defendant Phillipson. Accordingly, the Court concludes that Defendant Phillipson is entitled to summary judgment for lack of personal involvement.

Plaintiff seeks summary judgment on his access to courts claim, asserting that he is clearly entitled to judgment on this issue. However, for the reasons set forth above, Plaintiff is

incorrect. Therefore, the undersigned recommends denial of Plaintiff's partial motion for summary judgment.

Finally, the undersigned notes that Plaintiff has filed a motion to amend his complaint. In this motion, Plaintiff seeks to amend his complaint to add three new Defendants, Laura Heinritz, Peggy Carberry, and Bradley Haynie, to Plaintiff's racial discrimination claims. Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to these claims, so that his motion to amend should be denied.

As noted above, the grievance filed by Plaintiff which addressed his equal protection claims is grievance number LMF 08-05-2239-24c. Plaintiff fails to name Laura Heinritz, Peggy Carberry, or Bradley Haynie in that grievance. Plaintiff does name Peggy Carberry and Bradley Haynie in grievance number LMF 09-03-0731-24c, but as noted above, this grievance was not filed prior to the institution of Plaintiff's lawsuit as required by the PLRA. *Freeman*, 196 F.3d at 645. Therefore, allowing Plaintiff to amend his complaint to add these Defendants would be futile.

Plaintiff also asserts that Defendant Caruso should be reinstated as a Defendant because he notified her of the restrictions on his religious practice in a "personal and confidential communication." However, as previously noted by the court, Plaintiff has not alleged facts establishing that Defendant Caruso was personally involved in the activity which forms the basis of his claim. Defendant Caruso's only role in this action involves the denial of administrative grievances or the failure to act. Defendant Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Plaintiff also reasserts his due process claims, but fails to allege any facts which would change the disposition of those claims. In addition, Plaintiff expands on his access to courts claims. However, as noted above, Plaintiff's access to courts claims lack merit because he fails to show that

he suffered an actual injury. Finally, Plaintiff asserts that his equal protection claims are meritorious and seeks to reassert the facts set forth in his original complaint.

Plaintiff claims that because no responsive pleading was filed at the time he filed this motion, he should be able to amend his complaint as a matter of course. However, Plaintiff is mistaken. Defendants filed a motion for summary judgment on March 24, 2009 (docket #67), more than two weeks before Plaintiff's motion to amend was filed. In addition, Plaintiff claims that he should have been allowed to amend his complaint prior to the dismissal of any of his claims. In *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983), the Sixth Circuit stated that a district court may not sua sponte dismiss a plaintiff's suit unless the court first gives the plaintiff the opportunity to amend or correct the deficiencies in the complaint. *Id.* at 1111-12. However, as noted by the Sixth Circuit in *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (1997) (*overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)), *Tingler* was overruled by the Prison Litigation Reform Act (PLRA). Under Section 1915(e)(2), a court is required to dismiss a case when the action satisfies Section 1915(e)(2)(A) or Section 1915(e)(2)(B). Under the Prison Litigation Act, courts have no discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal. *McGore*, 114 F.3d at 611. Because Plaintiff's proposed amendments are futile and/or irrelevant, the undersigned recommends that Plaintiff's motion to amend be denied.

In summary, in the opinion of the undersigned, the motion for summary judgment filed by Defendants Bergh, Schroeder, Riley, Barsch, Contreras, Olger, Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Niemisto, Konrad, and McBurney (docket #67) should be granted with regard to Plaintiff's access to courts claims against Defendants Olger, Contreras and McBurney, and with regard to Plaintiff's conspiracy claims against Defendants Chrysler, Schooley, Govern, Alexander, Niemi, Laitinen, Barsch, Niemisto, Konrad, McBurney and Phillipson. Furthermore, the

motion for summary judgment is properly denied with regard to Plaintiff's equal protection claims against Defendants Govern, Alexander, Niemi, Laitinen, Barsch, and Niemi, and granted for lack of exhaustion with regard to Defendants Chrysler, Schooley, McBurney. Additionally, with regard to Plaintiff's First Amendment free exercise claims, the undersigned recommends that Defendants Bergh, Riley, and Schroeder be denied summary judgment.

The undersigned recommends that Defendant Phillipson's motion for summary judgment (docket #97) be granted for failure to exhaust administrative remedies, or in the alternative, for lack of merit, and that Plaintiff's motion for partial summary judgment (docket #88) be denied. Finally, the undersigned recommends that Plaintiff's motion to amend (docket #74) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


     /s/ Timothy P. Greeley
     TIMOTHY P. GREELEY
     UNITED STATES MAGISTRATE JUDGE

Dated:  January 28, 2010