UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


RONALD JORDAN,

        Plaintiff,

                                    File No. 2:08-CV-261

v.

                                      HON. ROBERT HOLMES BELL

PATRICIA CARUSO, et. al.,

        Defendants.

_____/

## **O P I N I O N**

This is a prisoner civil rights action brought by *pro se* Plaintiff Ronald Jordan

pursuant to 42 U.S.C. §§ 1983 and 1985 against employees of the Michigan Department of

Corrections ("MDOC"), including MDOC Director[1] Patricia Caruso, Classification Specialist

Christopher Crysler,[2] Departmental Specialist Scott Schooley, Assistant Deputy Warden

James Alexander, Resident Unit Manager Steven Niemi, Assistant Resident Unit Supervisor

Mike Laitinen, Assistant Resident Unit Supervisor Fred Govern, Resident Unit Manager Ken

Niemisto, LMF Warden David Bergh, Classification Director Sarah Schroeder, Chaplain

Gerald Riley, Administrative Assistant Ann Barsch, Inspector Jeffrey Contreras, Correctional

Officer Debra Olger, Resident Unit Manager Denver McBurney, Guard T. DeJong, Resident

---

[1]The Court refers to Defendants' job titles at the time of the events relevant to this case,
as stated in their respective affidavits. (*See* Dkt. Nos. 68, 98, Defs. Exs. A-R, Z.).

[2]Defendant Crysler's name is incorrectly spelled as "Chrysler" in some of the pleadings
and in the caption in this matter.

Unit Manager Cherie Konrad, and Transfer Coordinator Lynne Phillipson. A proposed amended complaint also names employees Laura Heinritz, Peggy Carberry, and Bradley Haynie.

The Magistrate Judge has issued a Report and Recommendation ("R&R"), recommending that this Court: (1) grant, in part, and deny, in part, a motion for summary judgment filed by Defendants Bergh, Schroeder, Riley, Basrch, Contreras, Olger, Crysler, Schooley, Govern, Alexander, Niemi, Latinen, Niemisto, Konrad, and McBurney; (2) grant a motion for summary judgment filed by Defendant Phillipson; (3) deny a motion for partial summary judgment filed by Plaintiff; and (4) deny Plaintiff's motion to amend the complaint. (Dkt. No. 103, R&R.) Defendants (Dkt. No. 106) and Plaintiff (Dkt. No. 108) have filed objections to the R&R.

This Court makes a de novo determination of issues in an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## I. Background

Plaintiff is a prisoner serving three life sentences for first degree murder, committed in 1969, assault with intent to rob while armed, committed in 1969, and first degree murder, committed in 1981, while he was incarcerated. Plaintiff is currently incarcerated at Alger Maximum Facility ("LMF"). On February 28, 2008, Plaintiff was transferred from

Marquette Branch Prison ("MBP") to LMF to accommodate his request to be served kosher meals.

Plaintiff filed his original complaint on October 21, 2008. In Count I, Plaintiff alleged that Defendants violated his right to exercise his religion by failing to provide him with a venue for weekly Sabbath services and by refusing to allow him not to work on the Sabbath. (Dkt. No. 1, Compl. ¶¶ 7-10.) In Count II, Plaintiff alleged that Defendants violated his constitutional right to due process by improperly confiscating property from his cell. (*Id.* at ¶¶ 12-22.) In Count III, Plaintiff alleged that Defendants violated his First Amendment right of access to the courts when they confiscated photographs that Plaintiff intended to use in support of a motion to challenge his criminal conviction. (*Id.* at ¶ 23.) In Count IV, Plaintiff alleged that Defendants have discriminated against him on the basis of race by continuing to classify him as a Level V security risk for a 1985 misconduct conviction for conspiracy to escape. (*Id.* at ¶ 33.)

On December 5, 2008, the Court dismissed the due process claim in Count II for failure to state a claim, and all claims against Defendants Caruso, DeJong, and Phillipson,[3] and allowed the remainder of the claims to proceed. (Dkt. No. 2, 12/05/2008 Op.) Defendants filed motions for summary judgment (Dkt. Nos. 67, 97),[4] and Plaintiff filed a motion to amend his complaint (Dkt. No. 74), and a motion for partial summary judgment

---

[3]The Court later reinstated the equal protection claim against Defendant Phillipson.

[4]Defendant Phillipson filed a motion for summary judgment separate from the other Defendants.

(Dkt. No. 88). The foregoing motions are the subject of the R&R and the objections before the Court.

## II. Defendants' Motions for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing that there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587)). Nevertheless, the mere existence of a scintilla of evidence in support a claim is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

As part of their motions for summary judgment, Defendants also argued that they are

entitled to qualified immunity. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There is a two-part test for determining whether immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id.* "For a right to be 'clearly established,' the 'contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right.'" *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009)). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

## A. Count I: Religious Practice

Plaintiff contends that Defendants Bergh, Riley, and Schroeder burdened his right to exercise his religion because (1) he was not offered the group services required for him to exercise his Jewish faith, and (2) he was required to work on the Sabbath in violation of the tenets of his faith. The R&R examined these claims and determined that there remains an issue of material fact with respect to Plaintiff's claims against these Defendants. (R&R 5-8.)

Defendants object to the determination of the R&R, and Plaintiff has responded to Defendants' objections. For the reasons that follow, the Court finds that summary judgment is warranted as to Plaintiff's group worship claim, but is not warranted as to Plaintiff's claim related to work on the Sabbath.

The Court will first address the statutory basis for this claim. Count I of Plaintiff's original complaint does not indicate the statutory basis for the claim, though the "Jurisdiction" section of the complaint cites 42 U.S.C. § 1983 as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Defendants have interpreted Plaintiff's claim as a First Amendment claim pursuant to § 1983, and the R&R analyzed Plaintiff's claim as such. In response to the motion for summary judgment, however, and in his objections, Plaintiff argues that his practice of religion has been burdened in violation of RLUIPA as well as the First Amendment.

Plaintiff's amended complaint seeks both damages and "a declaratory ruling and judgment." (Dkt. No. 74, Am. Compl. 9.) Monetary relief is not available to Plaintiff under RLUIPA. *See Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010) ("[T]his court has recently held that monetary damages are not available under RLUIPA.") (citing *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009)). Plaintiff can, however, pursue declaratory relief. Therefore, the Court will examine Plaintiff's religious-practice claims according to the requirements of the First Amendment as well as RLUIPA.

*Turner v. Safley*, 492 U.S. 78 (1987), provides the applicable First Amendment

standard, indicating that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. Several factors are relevant to making this determination: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 90-91. In the prison context, the Court is not required to consider each of the four factors, and with respect to the fourth factor, the plaintiff must point to ready alternatives. *Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir. 1999).

In contrast, RLUIPA provides, in pertinent part, that

[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

*(1) Group Worship*

Plaintiff contends that Defendants Caruso, Bergh, and Riley have refused to provide him a venue for weekly Sabbath services in accordance with the tenets of his Jewish faith. (Dkt. No. 1, Compl. ¶ 7.) Plaintiff also contends that videoconferencing equipment could be used by him to participate in remote services.

Defendant Riley, the prison chaplain at LMF, sent Plaintiff a memorandum on March 31, 2008, indicating that Plaintiff's request to attend Jewish services had been denied because only two prisoners had requested a service, and Riley needed four interested prisoners to schedule a meeting. (Dkt. No. 68, Defs. Ex. A-1.) There is a Michigan Department of Corrections ("MDOC") policy that "a service is not required to be conducted at a CFA institution if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group." MDOC Policy Directive 05.03.150 ¶ X (effective 09/20/2007)). According to Defendants, at Plaintiff's facility, a minimum of only four prisoners is required. (Def. Ex. A, Riley Aff; Def. Ex. S, Bergh Aff.)

Defendants contend that the group-worship policy is necessary to allocate limited prison resources. The prison chapel must be available to different groups wishing to use it, and religious activities must be supervised by prison officials. (*See* Dkt. No. 68, MDOC Policy Directive 05.03.150 ¶ Z (noting that group religious activities above security level I require "continuous in-room staff supervision at all times . . . [t]o ensure that prisoners are engaging only in conduct appropriate to the practice of the religion . . . .")) In *Spies v.*

*Voinovich*, 173 F.3d 398 (6th Cir. 1999), the Sixth Circuit upheld a group-worship rule requiring participation of at least five prisoners for similar reasons, noting that prison officials have a legitimate interest in regulating use of the prison chapel. *Id.* at 405; *see also Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010) ("This court has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services.").

Considering the first of the *Turner* factors, there is a valid, rational connection between the group-worship policy and Defendants' legitimate governmental interest in regulating use of the prison chapel. As to the second factor, allowing a smaller group to use the chapel would impact the ability of other inmates to use the chapel for group services, and would increase the burden on the prison to supervise group religious activity. As to the third factor, there is no evidence that Plaintiff is restricted in practicing his faith by other means. *See Colvin*, 605 F.3d at 291-92 (noting that the prisoner "points to no restrictions on his ability to practice Judaism privately, read Jewish literature, or correspond with other practitioners of the Jewish faith").

Plaintiff asserts in his objections that he does not challenge the group-worship rule because *ten* males are required to hold the Jewish service that he requests. (Dkt. No. 90, Pl.'s Objs. 9.) Thus, there is no dispute that Plaintiff's First Amendment rights are not affected by the group-of-four policy. If there were ten male individuals at his facility that were interested in the Jewish service that he desires, then the group-worship policy would not

prevent him from participating in such a service.

Nevertheless, Plaintiff contends that, instead of a group worship service in the prison chapel, he should be permitted to use the prison's videoconferencing system to participate in a worship service with other individuals at a remote location. He has submitted an affidavit attesting that he discussed his request with the prison chaplain, Defendant Riley, but that his request was refused. (Dkt. No. 90, Ex. 1, Pl. Aff.) Riley asserts that Plaintiff never made such a request. (Dkt. No. 68, Defs. Ex. A, Riley Aff.) Plaintiff has also submitted an affidavit from another prisoner indicating that a videoconferencing system exists in the prison which that prisoner used on several occasions to communicate with other prisoners. (Dkt. No. 90, Pl. Ex. 1, Underwood Aff.) In response, Defendant Riley asserts that the prison chapel does not have a videoconferencing system. (Defs. Ex. A, Riley Aff.) Riley indicates that "Alger Maximum's Chapel has no equipment or connections to accommodate such a request." (*Id.* ¶ 8.)

Thus, while Plaintiff's evidence arguably raises an issue of fact as to whether the LMF prison facility has a videoconferencing system that is sometimes used by prisoners, it does not demonstrate that the prison chapel has such a system or that there is a system available for use in connection with religious activities. Even assuming such a system exists, the reasons that justify the group-worship policy would also justify Defendants' denial of Plaintiff's request to use such a system. Allowing Plaintiff to use the videoconferencing system in the prison chapel would be the equivalent of allowing a smaller religious group to

use the prison chapel for religious services, thereby raising the same concerns regarding allocation of the use of prison resources that justify the group-worship policy. Alternatively, allowing Plaintiff to use the videoconferencing system elsewhere in the prison would require officials to divert resources that are available to allow prisoners to engage in group religious activity, and would extend the burden of holding and supervising religious activity from the area of the prison specifically allocated for that purpose to another. Thus, denial of such a request would be justified under *Turner* for the same reasons that support the group-worship policy.

Plaintiff also contends that his request could be accommodated by a transfer to another facility. Defendants did not expressly address the issue of transfer in their motion for summary judgment, and their failure to do so is understandable. Plaintiff's complaint alleges that Defendants violated his First Amendment rights by not "providing a venue where weekly Sabbath services are available." (Am. Compl. ¶ 7.) It also alleges that Defendants would not consider the possibility of using videoconferencing equipment to allow him to participate in group services. (*Id.* at 8.) It does not allege that Defendants denied a request for transfer to another facility to allow him to participate in group worship services. Moreover, there is no evidence or allegation that Defendants have a policy of denying prisoners an opportunity to transfer to another prison in order to attend religious services, or that any prison official refused to transfer Plaintiff to another facility to accommodate his desire for group-worship

services.[5]  There is also no evidence of a prison facility where Plaintiff would be able to participate in the services that he seeks.  Thus, his claim that Defendants violated his First Amendment rights by not transferring him to another facility fails because it is unsupported.

Defendants are also entitled to summary judgment with respect to Plaintiff's RLUIPA claim, for similar reasons.  Plaintiff acknowledges that the group-worship policy does not burden his ability to practice his religion, there is no genuine dispute that the prison chapel does not have the means to accommodate a request to use videoconferencing equipment for group services, and there is no allegation or evidence that Defendants denied him the opportunity to transfer to another prison where group services are held.

For the foregoing reasons, therefore, the Court will grant summary judgment in Defendants' favor as to Plaintiff's group-worship claim.

### (2) Work on the Sabbath

Plaintiff also contends that his prison work schedule burdens his exercise of religion by requiring him to work on the Sabbath, and that Defendants Schroeder and Bergh refuse to allow him Sabbath days off of work.  Defendants have offered evidence that prisoners are placed in work-assignment pools according to their security classification, that they are assigned to the first available position when their name reaches the top of the list in the assigned work pool, and that religious preferences are not considered.  (Def. Ex. C.

---

[5]The closest evidence is a letter from Plaintiff to Defendant Caruso, in which Plaintiff states: "That the accommodation is not available at the Alger prison does not resolve the problem, when it can be provided at many other facilities throughout the state."  (Dkt. No. 84, Ex. 3.)  But this letter is not a request for transfer.

Schroeder Aff.)  Plaintiff contends that he requested a change in his schedule that would not require him to work on Saturdays, but that he was told by Defendant Schroeder that he would need to perform ninety days of satisfactory performance in his current position in order to request a change to his schedule.  (Dkt. No. 90, Jordan Aff. ¶ 4.)  Defendants do not dispute that Plaintiff could have requested a change to his schedule after ninety days of satisfactory performance.[6]

The Court finds that Defendants are not entitled to summary judgment because the Court cannot conclude on the evidence before the Court that requiring Plaintiff to wait ninety days to request a change to his work schedule for religious reasons is reasonably related to a legitimate penological interest.

Plaintiff contends that there is a four-day (Monday to Thursday) detail that does not require work on Saturdays, as opposed to the three-day (Friday to Sunday) detail that he was required to work, and this is not disputed by Defendants.  Defendants contend that they would not have been able transfer Plaintiff to this other schedule because "presumably" another prisoner would have occupied it. (Dkt. No. 106, Defs. Obj. 5.)  Defendants also contend that switching Plaintiff's schedule with another prisoner would show favoritism and would "potentially" create jealousy or animosity for the removed prisoner.  (*Id*.) There is, however, no evidence in the record supporting Defendants' assertions, and it is not clear why

---

[6]Defendants assert in their objections that Plaintiff never actually requested a schedule change, but for purposes of summary judgment, the Court accepts Plaintiff's affidavit as creating an issue of fact.

a schedule-change, particularly the change requested by Plaintiff, would have the impact described by Defendants. There is no indication that Plaintiff requested a lighter or more desirable work assignment.

If the accommodation requested by Plaintiff raises a legitimate security concern or implicates another legitimate penological interest, Defendants have not offered evidence to demonstrate this. *Cf. O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-53 (1987) (noting evidence that accommodating Muslim prisoners' requests for weekend detail would drain prison resources, and would pose security issues by allowing "affinity groups" to flourish and by indicating to other inmates that one group is escaping work detail).

Defendants also contend that requiring prisoners to wait ninety days before requesting a new schedule serves the goal of continuity and "not having to constantly rework schedules and assignments." (Dkt. No. 106, Defs. Objs. 6.) It may be that it is difficult to grant an immediate request for a change in schedule from an administrative perspective, or it may be that making schedule changes would pose security problems or problems in allocating limited prison resources, but there is no such evidence before the Court. Furthermore, while there may be justification for requiring prisoners, generally, to keep a particular assignment for a period of time before requesting a change in their schedule, it does not follow that prison officials would need to constantly rework schedules to make *religious accommodations*.

Therefore, the Court will deny Defendants' motion for summary judgment regarding Plaintiff's claim that Defendants violated his rights by requiring him to work on the Sabbath

and to wait ninety days before requesting an alternate work schedule.

**B. Count III:  Access to the Courts**

Plaintiff contends in Count III of his complaint that Defendants violated his First Amendment right of access to the courts when they confiscated a book of photographs that he alleges he was using to prepare a motion for relief from judgment to be filed in state court. According to Defendants, the photographs were contraband because they contained pictures of a "crime scene, injuries to the victim, and autopsy photos."  (Dkt. No. 68, Defs. Ex. D, Contreras Aff.)  The R&R recommends granting Defendants' motion for summary judgment as to this claim.   For the reasons that follow, the Court will adopt the disposition recommended by the R&R and grant Defendants' motion for summary judgment as to this claim.

The R&R determined that a post-appeal motion for relief from judgment pursuant to Rule 6.502 of the Michigan Court Rules is not a basis for a right-of-access claim, citing *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).  In that case, the Sixth Circuit stated that "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Id.* at 391.

The Court disagrees with this determination in the R&R.  In support of its statement describing the type of motions that are the subject of a prisoner's right of access to the courts, *Thaddeus-X* quoted *Lewis v. Casey*, 518 U.S. 343 (1996). *Thaddeus-X*, 175 F.3d at 391.  In *Lewis*, the Supreme Court stated that protecting a prisoner's right of access to the courts

requires providing them with the tools that are needed to "attack their sentences, directly or collaterally." *Lewis*, 518 at 355. The statement in *Lewis* is broader than the statement in *Thaddeus-X*, but *Thaddeus-X* did not provide any rationale for its particular formulation of the rule in *Lewis*. Thus, this Court understands the list of actions in *Thaddeus-X* as a restatement of the rule in *Lewis* rather than an express limitation of that rule.

Plaintiff's motion for relief from judgment pursuant to Rule 6.502 of the Michigan Court Rules satisfies the broader formulation in *Lewis*. Though the motion is not a "habeas corpus application," Rule 6.502 allows a criminal defendant to move to "set aside or modify" a judgment of conviction and sentence. Mich. Ct. R. 6.502(A). *Lewis* indicates that the right of access to the courts applies to all motions that may be used to directly or collaterally attack a prisoner's conviction and sentence. Thus, Plaintiff's motion is the type of motion to which the right of access to the courts applies.

Nevertheless, Plaintiff's claim cannot withstand Defendants' motion for summary judgment because, as Defendants asserted in their motion for summary judgment, Plaintiff has not demonstrated actual injury. A plaintiff claiming denial of access to the courts must demonstrate actual injury to the pursuit of a non-frivolous legal claim. *Lewis*, 518 U.S. at 352-53.

In response to the motion for summary judgment, Plaintiff relied upon statements in his verified complaint and affidavit to the effect that he was unable to complete his motion without the photos and that the court needs a copy of the photos to review his motion. (Dkt.

No. 1, Compl. ¶ 24; Dkt. No. 90, Pl.'s Aff. ¶¶ 7-8.)  But Plaintiff provided virtually no detail

regarding the basis for his motion for relief from judgment.[7]  Plaintiffs' statements fall short

of raising a genuine issue of fact as to whether lack of access to the photos prevented him

from filing a motion in support of a non-frivolous claim.  *See Alexander v. CareSource*, 576

F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are

insufficient to establish a factual dispute that will defeat summary judgment."); *Johnson v.

Interstate Brands Corp.*, 351 F. App'x 36, 42 (6th Cir. 2009) ("A plaintiff's conclusory

allegations and subjective beliefs are not a sufficient basis to deny summary judgment.")

(unpublished) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)).

Moreover, to the extent Plaintiff alleges he is now unable to send the photos to the

Court, it is not disputed that Defendants are not responsible for this state of affairs.

Defendants provided undisputed evidence that Plaintiff chose the destination for his materials

when they were shipped out of the prison facility.  (*See* R&R 9.)  Though Plaintiff was not

permitted to keep the photos in his cell, there is no dispute that he controlled where and to

whom they were sent.  Thus, his inability to send the photos to a court in connection with his

motion cannot be attributed to Defendants.[8]

---

[7]It appears that Plaintiff intended to use the photos, which were part of the evidence
available at his criminal trial, to challenge his 1982 criminal conviction.  (*See* Dkt. No. 1, Compl.
¶ 23.)  Because the conviction is nearly thirty years old, Plaintiff's challenge is highly unlikely to
be non-frivolous.

[8]Plaintiff contends that the materials are in the possession of a relative who is unable to
send the photos and evidence to a court; however, Defendants are not responsible for Plaintiff's
decision to ship his materials to this location.

Therefore, because Plaintiff failed to provide evidence of actual injury to a non-frivolous claim, and because there is no genuine dispute that Defendants' actions did not prevent Plaintiff from filing his motion after the photos were shipped out of the prison facility, the Court will grant summary judgment in favor of Defendants as to Plaintiff's access to the courts claim.

### C. Count IV: Equal Protection

Plaintiff, who is African-American, claims that Defendants discriminated against him by recommending or approving a Level V security level based on Plaintiff's 1985 misconduct conviction for conspiracy to escape when they should have decreased it over time. (*See* Dkt. No. 90, Pl.'s Aff. ("These same defendants have reduced custody of Caucasian prisoners with histories containing every factor defendants proffer as justification for Affiant's security increase.").)

Security classification decisions are generally made once per year. (See Dkt. No. 98, Defs. Ex. Z, Phillipson Aff. ¶ 4.) Defendants are allegedly involved in at least two security classification decisions, one that was made in February of 2008, and another in February of 2009. The 2008 security classification determination was made in connection with Plaintiff's transfer from MBP to LMF. A security classification screening form from MBP, dated February 28, 2008, shows that Plaintiff's "confinement level" and "management level" are at Level II, but Laura Heinritz recommended an upward departure to security Level V because Plaintiff's "escape history warrants higher security level." (Dkt. No. 98, Defs. Ex.

Z-1.) Defendant Alexander signed his approval of placement of Plaintiff at Level V. (*Id.*)
A transfer order from MBP to LMF dated February 29, 2008, notes that Plaintiff is on the
"CFA hold" list "based on history of violence and escape." (*Id.* at Ex. Z-2.) The transfer
order notes "Risk Violence" as "Very High" and sets the security level at Level V. It also
notes Defendant's last major misconduct on July 3, 2007, for "threatening behavior." (*Id.*)
Heinritz signed her approval the transfer order. (*Id.*)

The R&R recommends granting summary judgment as to Defendants Crysler, Konrad,
Schooley, and McBurney, because Plaintiff failed to exhaust his administrative remedies
against them as to this claim, and recommends denying summary judgment as to the other
Defendants, because Plaintiff has raised an issue of material fact sufficient to survive
summary judgment. (R&R 15.) For the reasons that follow, the Court agrees with the
disposition recommended by the R&R as to the issue of exhaustion, and agrees that summary
judgment is not warranted.

### (1) Exhaustion

Prior to filing a civil lawsuit, a prisoner must first properly exhaust his available
administrative remedies. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).
"Proper exhaustion demands compliance with an agency's deadlines and other critical
procedural rules because no adjudicative system can function effectively without imposing
some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.
"'Failure to exhaust is an affirmative defense under the PLRA, and [] inmates are not

required to specifically plead or demonstrate exhaustion in their complaints.'" *Grinter v. Knight*, 532 F.3d 567, 577-78 (6th Cir. 2008) (quoting *Jones v. Bock*, 127 S. Ct. 910, 921 (2007)). Defendants bear the burden of proving failure to exhaust. *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

Finally, though the Supreme Court indicated in *Jones v. Bock* that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances," 549 U.S. at 219, it also stated that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* The MDOC procedures at issue in *Jones* did not require prisoners to name particular officials. *Id.* The MDOC subsequently revised its policies to require prisoners to name those individuals involved in the issue being grieved. *See Vandiver*, 326 F. App'x at 888.

### (a) Defendant Crysler

Defendants submitted evidence, which included a copy of a grievance inquiry, that Plaintiff never exhausted a discrimination grievance. The Magistrate Judge reviewed the grievances referenced by Plaintiff in response to the motion for summary judgment (*see* Dkt. No. 84, Exs. 1-2) and determined that they do not suffice to show exhaustion as to Defendant Crysler because Crysler is not named in these grievances. (R&R 15.) In his objections to the R&R, Plaintiff contends that another grievance, no. MBP 06-08-1515-21z, exhausted his remedies against Defendant Crysler. Even if this grievance were sufficient to show that he had exhausted his remedies as to his claim against Defendant Crysler, however, Plaintiff

failed to mention this grievance in response to the motion for summary judgment. Absent compelling reasons, a party may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)). Plaintiff offers no explanation for not bringing this grievance to the attention of the Magistrate Judge; thus, his argument that this grievance exhausts his claim against Defendant Crysler is waived. *Id.*

### (b) Defendant McBurney

The R&R also determined Plaintiff had not exhausted his remedies against Defendant McBurney. The 2008 grievance, grievance no. LMF-0805-2239-24c, did not exhaust Plaintiff's administrative remedies because it does not name Defendant McBurney. (Dkt. No. 98, Defs. Ex. AA.) The 2009 grievance, which does name Defendant McBurney, grievance no. LMF-0903-0731-24c, did not exhaust Plaintiff's administrative remedies as to his equal protection claim because it was filed in 2009, after Plaintiff filed his complaint. (Dkt. No. 98, Defs. Ex. BB.) Generally, exhaustion of administrative remedies must occur prior to filing suit. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Plaintiff objects that the 2009 grievance exhausted his claim because it addresses a security-level determination occurring in 2009 after he filed the original complaint, but before he filed his amended complaint. (*See* Dkt. No. 98, Defs. Ex. BB.) Plaintiff could not have exhausted a claim involving the 2009 security-level determination before filing his

*original* complaint, because the event had not yet occurred.

Plaintiff cites *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001), in which the Sixth Circuit held that the plaintiffs in that case could exhaust their grievance remedies after the filing of their complaint, but before the filing of their amended complaint. *Id.* at 502. That case is not applicable because the conduct challenged by the plaintiffs in that case occurred before or simultaneously with the effective date of the Prison Litigation Reform Act (PLRA). *Id.* The plaintiffs filed their complaint shortly after the PLRA was passed, and they exercised diligence to exhaust their remedies early on in the proceedings. *Id.* In contrast, Plaintiff was not placed in the position of attempting to comply with a new statutory requirement arising shortly before he filed his complaint. The court in *Curry* indicated that its ruling was limited to the facts of that case. *See Curry*, 249 F.3d at 503 n.3 ("[T]hese circumstances are not likely to be repeated in this Court. . . . It is unlikely subsequent plaintiffs would find themselves in these unique circumstances."). Finally, *Curry* was decided before the 1996 amendments to the PLRA, which made exhaustion a mandatory requirement. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted."). Plaintiff offers no other authority for allowing a claim to proceed in these circumstances.

This might have been a different case if Plaintiff's amended complaint had alleged new claims against Defendant McBurney. Plaintiff could plausibly argue that a new claim against Defendant McBurney, arising after the complaint, could be exhausted before filing

the amended complaint; however, Plaintiff's complaint alleges, generally, that Defendant McBurney has discriminated against him by recommending or approving a departure in his security-level classification. According to Plaintiff, the discrimination at issue is part of a "continuous violation arising from the same transaction presented in the complaint." (Dkt. No. 108, Objs. 3.) Yet, Plaintiff chose to name McBurney as a Defendant to his equal protection claim before Plaintiff had exhausted his administrative remedies. By doing so, Plaintiff thwarted the opportunity for Defendant McBurney, or other prison officials, to correct any improper action before the Court intervenes. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010) (noting the purposes of exhaustion). The PLRA requires dismissal in these circumstances.

Therefore, the equal protection claim against Defendant McBurney will be dismissed for failure to exhaust.

### (c) Defendant Schooley

Plaintiff also objects to dismissal of his discrimination claim against Defendant Schooley, contending that Schooley is named in a 2005 grievance attached to his objections. (Dkt. No. 108, Ex. 9.) The grievance attached to Defendant's objections does not show a response from the prison officials, and Plaintiff asserts that officials failed to respond to this grievance.

Plaintiff does not explain why this particular grievance was raised for the first time in his objections and was not brought to the attention of the Magistrate Judge in response to

the motion for summary judgment. Thus, his argument that this grievance exhausted his claim against Defendant Schooley is waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998).

For the foregoing reasons, Plaintiff's equal protection claims against Defendants Crysler, McBurney, Konrad,[9] and Schooley are subject to dismissal because they were not properly exhausted before he filed his complaint.

### (2) Personal Involvement

#### (a) Defendant Barsch

Defendants argue that Defendant Barsch should be dismissed from the case for lack of involvement in this, or any other, claim by Plaintiff. Defendant Barsch alleges in her affidavit that she is an administrative assistant, that she was not involved in any of the facts alleged in Plaintiff's complaint, that she does not have authority over prisoner placement and transfer, and that her job duties do not entail approving or designating prisoners as being an escape risk. (*See* Dkt. No. 68, Defs. Ex. K, Barsch Aff.) Plaintiff does not dispute this evidence. He contends that Defendant Barsch recommended a security level departure under a different name, but he provides no evidence to support his contentions. The Court will, therefore, grant summary judgment in Defendant Barsch's favor for lack of personal involvement.

---

[9]Plaintiff does not object to the R&R's determination that he failed to exhaust his remedies against Defendant Konrad. Accordingly, the Court will adopt this conclusion from the R&R.

### (b) Defendant Alexander

Defendant Alexander contends that he does not recall approving a three-level increase for Prisoner Jordan, and that he did not have such authority, because such a transfer would require CFA approval. (Dkt. No. 68, Defs. Ex. R, Alexander Aff.) The 2008 security classification document is consistent with these assertions. (Dkt. No. 98, Defs. Ex. Z-1.) The form contains a line for "True Security Level (Departure)" and a line for "Actual Placement Level (Waiver)." (*Id.*) It indicates that Laura Heinritz approved the departure in Plaintiff's security level, identifying the "true security level" as Level V. (*Id.*) In response to Plaintiff's 2008 grievance, the step I also respondent indicated that "CFA Heinritz" departed Plaintiff's security level. (Dkt. No. 98, Defs. Ex. AA.)

With respect to actual *placement* level, the form states: "If there is a placement *available* at the prisoner's true security level enter that level here." (*Id.*) The form shows that Defendant Alexander approved a Level V placement. It thus appears that the security level departure decision was approved by Laura Heinritz, and that Defendant Alexander's role was to approve *placement*, based on availability and the determination already made by Heinritz. Considering the foregoing evidence, summary judgment is warranted in Defendant Alexander's favor because there is no genuine dispute that he did not have a role in classifying Plaintiff as a Level V prisoner.

### (c) Defendant Phillipson.

Defendant Phillipson asserts that she was not personally involved in the security level

classification and that she is entitled to qualified immunity. She states in her affidavit that she was a case manager and transfer coordinator at LMF during the relevant time period, and that she did not approve or recommend the 2008 security classification, which was prepared by staff at MBP. (Dkt. No. 98, Defs. Ex. Z.) She asserts that her involvement in 2008 was to coordinate prisoner transfers from MBP. She also contends that she was not Plaintiff's case manager or resident unit supervisor when his 2009 classification was completed, and that she did not have authority to transfer Plaintiff or to recommend or approve a Level V placement. (*Id.*)

Plaintiff does not dispute this evidence, but contends, without any evidentiary or factual support, that Defendant Phillipson conspired with the other Defendants to discriminate against him. The Court will grant summary judgment in Defendant Phillipson's favor because there is no genuine dispute that she did not have a role in Plaintiff's security classification. She did not have authority to recommend or approve this decision, and her coordination of Plaintiff's transfer from one facility to another is not sufficient to implicate her in his claim regarding the security classification determination. There is no evidence suggesting that she conspired with other Defendants for the purpose of discriminating against Plaintiff.

### (3) Merits

The R&R determined that Plaintiff had offered sufficient evidence to survive Defendant's motion for summary judgment on Plaintiff's equal protection claim. Defendants

argue in their objections, as they did in their motion for summary judgment, that the evidence supporting Plaintiff's discrimination claim is insufficient for a jury to find that his rights were violated. The Court will uphold the determination of the R&R.

The Equal Protection Clause provides that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. It guarantees that similar individuals will be treated in a similar manner by the government.

Defendants contend that Plaintiff was assigned to Level V security because he has been convicted of two murders, including the murder of another inmate while he was incarcerated, he is an escape risk based on a 1985 misconduct conviction for conspiracy to escape, and because he told a prison official that the official should be "murdered in the most painful means imaginable." (Dkt. No. 68, Def. Ex. P, Niemisto Aff.; Def. Ex. S, Bergh Aff; Def. Ex. Q, Niemi Aff.)

In support of his equal protection claim, Plaintiff offered what purports to be the affidavit from another prisoner, George Couch, who contends that he is white, he murdered another inmate, he is an escape risk, but he was not maintained in Level V security for more than a temporary period of time. (Dkt. No. 90, Attachments, Couch Aff.) The R&R relied on the Couch affidavit when it determined that Plaintiff had established a genuine issue of material fact. (R&R 11-12.) Plaintiff also listed the names of several white prisoners in his verified complaint, whom he contends have "extensive escape histories" but were not maintained at a high security level for an extended period of time. (Dkt. No. 1, Compl. ¶ 35.)

Defendants argue that Plaintiff's claim fails to survive summary judgment because there is no evidence that any of the other prisoners identified by Plaintiff are similarly situated with him. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 922 F.2d 1031, 1036 (6th Cir. 1992) ("The basis of any equal protection claim is that the state has treated similarly-situated individuals different.").

Plaintiff's reference in his complaint to other prisoners with high escape risk is not sufficient in itself to withstand summary judgment, because there is no allegation or evidence that any of these other prisoners have a history that rises to the level of Plaintiff's history, including a murder conviction prior to incarceration, a risk of escape, a murder conviction during incarceration, and verbal threats towards a prison officer. (*See* Dkt. No. 68, Def. Ex. P, Niemisto Aff.) Defendants could reasonably conclude that Plaintiff's escape history, as well as his history of violence in the prison context, merited a more restrictive security level.

The affidavit of prisoner George Couch does not create an issue of fact because it is unsigned and unsworn.[10] Unsworn affidavits may not be considered on a motion for summary judgment. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 481 (6th Cir. 2008). Nevertheless, Defendants do not dispute the facts alleged in the affidavit. The Court takes

_____

[10] "/s/ G. Couch" is typed on the signature line for the affidavit, and "/s/ D. Mallek." is typed on the signature line for the notary public (Dkt. No. 90, Couch Aff.) The Local Rules of the Court require pro se parties to submit original signatures. W.D. Mich. LCivR 5.7(e)(ii). Even electronically-filed affidavits must bear a scanned image of the original manuscript signature. W.D. Mich. LCivR 5.7(d)(iii). Plaintiff contends that the prison librarian would not permit him to make copies of the original affidavit. (Dkt. No. 90, Jordan Aff.) But Plaintiff does not explain his failure to file even one copy of the signed affidavit, or to file a copy of the affidavit after his initial response.

judicial notice that, according to the MDOC offender registry, prisoner George Couch is a white prisoner with a conviction for escape from prison in 1978, as well as a conviction for a first degree murder offense occurring in 1981, during the time that he was serving his original sentences. As of July 27, 2010, prisoner Couch is assigned to Level II security.

In his amended complaint, Defendant also identifies prisoner "Rohn 147473." According to the MDOC offender registry, prisoner Billy Joe Rohn is a white prisoner who has been convicted of multiple assault and weapons charges, as well as a homicide committed while incarcerated. As of July 27, 2010, Rohn is assigned to Level IV security.

In light of the foregoing evidence, the Court agrees with the R&R and concludes that there is evidence sufficient to raise an issue of fact as to whether Plaintiff was treated differently from similarly-situated white prisoners.

Defendants also argue that there is no evidence that race played a factor in the security classification decision. To demonstrate a violation of the Equal Protection Clause, Plaintiff must show not only that Defendants' conduct had a discriminatory effect, but also that discriminatory purpose was a motivating factor in the security classification decision. While evidence of disparate impact is relevant, it is not sufficient to support an equal protection claim. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) ("In order to establish a violation of the Equal Protection Clause, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials."). "'Discriminatory purpose' . . .

implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group.'" *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "Determining whether invidious discriminatory purpose was a motivating factor demands an inquiry into such circumstantial evidence of intent as may be available." *Copeland*, 57 F.3d at 481.

The Court notes that the 2008 security classification screen evaluated Plaintiff's recent history of misconduct and concluded that his confinement and management levels were at Level II. (Dkt. No. 98, Ex. Z-1.) The confinement level determination considered whether there is "[a]ny escape attempt or conspiracy to escape secure adult custody in last 5 years." (*Id.*) The management level determination considered Plaintiff's history of conduct in the previous twelve months. (*Id.*) The stated justification for the security level departure from Level II to Level V was "escape history warrants higher security level," presumably for Plaintiff's conviction for conspiracy to escape many years earlier. (*Id.*) The screening form does not indicate that Plaintiff's violent history was the basis for his security level departure. Moreover, though other Defendants have asserted justifications for Plaintiff's continued assignment to Level V, it is not clear what role the other Defendants played in the classification decision, and there is no evidence from Heinritz herself as to the basis for her departure determination, other than what is stated in the security classification form.

Considering the undisputed evidence that other white prisoners with escape histories and murder convictions were reduced in their security level following their convictions, and the length of time since Plaintiff's murder and escape convictions, Plaintiff has presented an issue of fact as to whether Plaintiff's escape risk and violent history was the true basis for the security-level departure.

Finally, even if Plaintiff's evidence is not sufficient to withstand summary judgment, the Court notes that Plaintiff has not been given the opportunity to conduct discovery on the circumstances surrounding his security classification. For the foregoing reasons, therefore, the Court agrees with the recommendation of the R&R that summary judgment is not merited with respect to Plaintiff's equal protection claim at this time.

### D. Conspiracy Claim

The R&R also recommends that the Court grant summary judgment in favor of Defendants on Plaintiff's claim that Defendants were involved in a conspiracy to discriminate against him by continuing to maintain him at level V security.[11] Plaintiff argues in his objections that there is sufficient evidence to infer that "defendants shared in the conspiracy objective (to keep plaintiff in maximum custody) and committed overt acts in furtherance of the conspiracy by recommending or approving a three level custody increase." (Dkt. No. 108, Pl. Obj. 5.) Plaintiff refers to his affidavit in which he asserts that the Defendants "usually consulted with one another" when they maintained his security level,

---

[11]The complaint does not contain a separate conspiracy count, but alleges that Defendants "acted in concert" to violate Plaintiff's rights. (Compl. ¶ 45.)

and notes that the security screening forms contain the names of three or more of the Defendants. (*Id.* 4.) Plaintiff contends that further discovery will allow him to develop these facts.

The Court agrees with the determination in the R&R because there is no evidence to suggest that Defendants engaged in a common enterprise *for the purpose of* discriminating against Plaintiff or for denying him his First Amendment rights. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993). Though the security screening form arguably demonstrates that Defendants acted concurrently with respect to the security classification, Plaintiff must show that Defendants were engaged in a common enterprise with a conscious objective of depriving Plaintiff of his rights. *Id.* The purpose requirement is not met merely because there exists a conspiracy that has the *effect* of depriving Plaintiff of his rights. *Id.* Nothing in Plaintiff's response to the motion for summary judgment indicates the material facts that he could discover to demonstrate the purpose requirement. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (noting that a party seeking additional discovery must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information"). The Court will, therefore, award summary judgment to Defendants as to Plaintiff's conspiracy claim.[12]

---

[12]It also appears that Plaintiff may have withdrawn his conspiracy claim. Plaintiff's amended complaint does not allege that Defendants acted in concert, and it does not contain any other allegations of a conspiracy.

### III. Motion to Amend the Complaint

Plaintiff also moves to amend his complaint to add new parties and assert additional facts in support of his claims. (Dkt. No. 74.) The R&R determined that Plaintiff needed leave of the Court to amend, reasoning that even though Defendants had not filed an answer to the complaint, Defendants' motion for summary judgment cut off the time in which Plaintiff could amend his complaint as a matter of course. (R&R 22.)

The Court disagrees with this determination in the R&R. Plaintiff was not required to seek leave of the Court to amend his complaint because the relevant version of Rule 15 of the Federal Rules of Civil Procedure in effect at the time allowed a party to amend a pleading once as a matter of course before being served with a "responsive pleading." Fed. R. Civ. P. 15(a)(1) (2007). A *motion* for summary judgment is not a responsive *pleading* under Rule 15. *In re Agent Orange Prod. Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2006); *Ohio Cas. Ins. Co. v. Farmers Bank of Clay, Ky.*, 178 F.2d 570, 573 (6th Cir. 1950) (cited in *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008)). Defendants had not filed a responsive pleading to the complaint; thus, under the rules in effect at the time, Plaintiff had the right to amend his complaint once as a matter of course. *See Broyles v. Corr. Med. Servs., Inc.*, 2009 WL 3154241 (6th Cir. Jan. 23, 2009) (finding that the district court abused its discretion in denying a motion to amend because amendment as a matter of course under Rule 15 is an absolute right).

Nevertheless, the Court will review the amended complaint to determine whether any

claims should be dismissed sua sponte. The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., states that the Court can dismiss a "claim" or "action" if it is satisfied that it is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. §§ 1997e(c)(1) & (c)(2). The in forma pauperis provisions of 28 U.S.C. § 1915(e) also require a court to "dismiss the case" if "at any time" the court determines that the action "is frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). *See also* 28 U.S.C. § 1915A.

The Court previously dismissed Defendants Caruso and DeJong, and Plaintiff's due process claim in Counts II and IIA, for failure to state a claim, pursuant to the PLRA and 28 U.S.C. §§ 1915(e)(2), 1915A(b). (*See* Dkt. No. 2, 12/05/2008 Op. 5-8.) The R&R concluded that Plaintiff is barred from reinstating these parties or claims in his amended complaint because "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal" under the PLRA. *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997); *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) ("Our rule in *McGore* requires that a plaintiff, who fails to make a sufficient allegation of exhaustion in their initial complaint, also not be allowed to amend his complaint to cure the defect."); *see also Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 354 (6th Cir. 2006) (indicating that a complaint filed by a prisoner proceeding in forma pauperis must be dismissed with prejudice under 28 U.S.C. § 1915(e)(2) if it fails to state a claim).

Therefore, the Court will consider whether the Defendants' motions for summary judgment address the claims in the amended complaint, and whether any new claims or parties in the amended complaint should be dismissed *sua sponte* for failure to state a claim, or because they are barred by the Court's previous *sua sponte* dismissal.

In considering whether Plaintiff's complaint fails to state a claim, the Court accepts the complaint's factual allegations as true, and draws all reasonable inferences in favor of Plaintiff. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). But the factual allegations "must be enough to raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

(a) Defendant Caruso

The Court previously dismissed Defendant Caruso for failure to allege facts indicating her personal involvement in any of the violations at issue. Plaintiff's amended complaint attempts restate his claims to implicate Defendant Caruso in his discrimination, access to the courts, and religious practice claims. (*See* Dkt. No. 74, Ex. 1, Am. Compl. ¶¶ 10, 30, 38.) His claims against Defendant Caruso are barred by the Court's previous dismissal.

Even if his claims are not barred, the new allegations are insufficient to state a claim. The amended complaint states that Defendant Caruso was made aware of the violations alleged by Plaintiff through communications from Plaintiff to Defendant Caruso. Mere knowledge of the actions of subordinates does not suffice to create supervisory liability under

§ 1983. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009) (noting that a supervisor must have "'encouraged the specific incident of misconduct or in some other way directly participated in it.'") (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)).

Plaintiff also alleges that Defendant Caruso was "deliberately indifferent" to conduct by her subordinates and has "approved and/or knowingly acquiesced in the racial discrimination practiced by subordinates under her control." (Am. Compl. ¶¶ 30, 38.) The Court is not required to accept these allegations because they are conclusory and unsupported by factual allegations or reasonable inferences that may be drawn therefrom. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) ("'We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'") (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009)). Thus, Plaintiff's amended claims against Defendant Caruso will be dismissed because they are barred and they fail to state a claim.

(b) Count I

The religious-exercise claim in Count I of Plaintiff's proposed amended complaint is substantially the same as in the original complaint. Thus, the Court will grant summary judgment in Defendants' favor as to the group-worship claim in Count I, for the reasons stated in this opinion, and will deny summary judgment as to the claim regarding work on the Sabbath.

<u>(c) Count II</u>

Count II of Plaintiff's amended complaint is based on the same transaction as Count II in the original complaint, which was previously dismissed by the Court because Plaintiff failed to plead the inadequacy of state post-deprivation remedies. (Dkt. No. 2, 12/05/2008 Op.) Plaintiff alleges that, on March 4, 2008, Defendant Olger confiscated various items from Defendant "on the pretext the items were 'Not Allowed Level V' knowing JORDAN had been authorized to possess the property for many years in level V." (Dkt. No. 74, Am. Compl. ¶ 12.) Plaintiff alleges that Defendant McBurney conducted a hearing and declared the items to be contraband "for the reason alleged by OLGER," though there was "no evidence presented at the hearing to demonstrate the property was not allowed level V." (*Id.* at ¶ 13.)

This claim is barred by the Court's previous dismissal. Moreover, Plaintiff fails to state a due process claim because he does not allege that he was deprived of property without notice and an opportunity to be heard. *See Scott v. Norton*, 96 F. App'x 378, 380 (6th Cir. 2004). According to his allegations, he was given notice and a hearing. His original complaint indicates that Defendant Olger made allegations about the confiscated property that were stated in the notice of intent to conduct a hearing. (Dkt. No. 1, Compl. ¶ 15.) Accepting Plaintiff's allegations as true, the state's failure to present evidence at a hearing to support the allegations of Olger did not violate his due process rights. Defendants were not required as a matter of due process to accept Plaintiff's arguments and evidence over the

allegations of a prison official. Plaintiff's disagreement with the outcome of the hearing does not raise a due-process issue.

Therefore, Count II of the amended complaint will be dismissed because it is barred and it fails to state a claim.

### (d) Count IIA

Count IIA of the amended complaint alleges that Plaintiff's due process rights were violated when Defendant DeJong confiscated three bags of coffee creamer that Plaintiff had purchased from the prisoner store. This Count was previously dismissed for failure to state a claim, and Plaintiff cannot amend his complaint to reassert this claim. Even if this claim was not barred by the previous dismissal, it fails to state a due process claim. Plaintiff's asserted right to keep three bags of coffee creamers is a de minimis property interest that is not protected by the Due Process Clause. *See Kennedy v. City of Cincinnati*, 595 F.3d 327, 335 (6th Cir. 2010) (holding that a $10 pool pass is a de minimis interest).

Therefore, Count IIA of the amended complaint will be dismissed because it is barred and because it fails to state a claim.

### (e) Count III

Count III of the amended complaint, the access-to-courts claim, is based on the same transaction as Count III of the original complaint. Therefore, the Court will grant summary judgment in Defendants' favor as to Count III, for the reasons stated herein.

<u>(f) Count IV</u>

Count IV of the amended complaint states substantially the same discrimination claim as the original complaint, though it adds Laura Heinritz, Bradley Haynie, and Peggy Carberry as parties to the claim. The original complaint alleged, in relevant part:

> Defendants CRYSLER, SCHOOLEY, GOVERN, ALEXANDER, NIEMI, LAITINEN, BARSCH, NIEMISTO, KONRAD, McBURNEY and PHILLIPSON, have all recommended and/or approved JORDAN's three level custody increase as an escape risk. At the same time, defendants have recommended and/or approved white prisoners with histories of two, three, four, or more escapes or attempts to be routinely reduced to custody after only a few years in level V. Named defendants have a pattern, practice and custom of allowing white prisoners preferential custody placement over African-American prisoners.

(Dkt. No. 1, Compl. ¶ 34.) The amended complaint states, in relevant part:

> Defendants CHRYSLER [sic], SCHOOLEY, *HEINRITZ*, *HAYNIE*, GOVERN, ALEXANDER, NIEMI, LAITINEN, BARSCH, NIEMISTO, KONRAD, McBURNEY, PHILLIPSON, and *CARBERRY*, have all recommeded [sic] and/or approved JORDAN's custody increased as an escape risk. At the same time, defendants have recommended and/or approved white prisoners with histories of two, three, four, or more escapes or attempts reduced to custody after only a few years in level V. Named defendants have a pattern, practice and custom of allowing white prisoners preferential custody placement over non-whites, invidiously discriminating against African-Americans in general, JORDAN in particular, unrelated to any security concern.

(Dkt. No.74, Attach. 1, Am. Compl. ¶ 34 (emphasis added).) The only additional allegations in the amended complaint to support a discrimination claim against the new parties are references to the two grievances related to Plaintiff's discrimination claim, grievances "LMF 2008 05 2239 24C and LMF 2009 03 0731 24C." (Dkt. No. 74, Am. Compl. ¶ 39.)

Defendants argued in response to the motion to amend that Plaintiff failed to exhaust his administrative remedies as to the new Defendants because Plaintiff's grievances were not

discrimination grievances. (*See* Dkt. No. 77.) The 2008 grievance identifies Heinritz in the step I response. (Dkt. No. 98, Defs. Ex. AA.) The 2009 grievance names Carberry and Haynie. (Dkt. No. 98, Defs. Ex. BB.) Both grievances refer to the issue of discrimination in Plaintiff's security classification. Defendants have not asserted any other deficiencies in these grievances; thus, they have not satisfied their burden to show that Plaintiff did not exhaust his remedies.

Accordingly, the newly-added parties to the claim in Count IV of the amended complaint will not be dismissed for failure to exhaust. The remaining Defendants with respect to this claim, including the new Defendants, are Defendants Govern, Niemi, Laitinen, Niemisto, Carberry, Haynie, and Heinritz.

### IV. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion for partial summary judgment requests summary judgment with respect to his access-to-the-courts claim. The motion will be denied because, for the reasons stated in this opinion, the Court will award summary judgment in Defendants' favor as to this claim.

An order will be entered that is consistent with this opinion.


Dated: <u>August 10, 2010</u>                    <u>/s/ Robert Holmes Bell</u>
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE